UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALD MINNITI<br>535 Christine Ann Lane<br>Nazareth, PA 18064<br><br>       Plaintiff,<br><br>       v.<br><br>CRYSTAL WINDOW & DOOR SYSTEMS PA, LLC<br>204 Franklin Valley Road<br>Benton, PA 18414<br><br>And<br><br>CRYSTAL WINDOW & DOOR SYSTEMLS, LTD<br>31-10 Whitestone Expressway<br>Flushing, NY 11354<br><br>       Defendants. | JURY DEMANDED<br><br><br><br>No. |

**CIVIL ACTION COMPLAINT**

**I. Parties and Reasons for Jurisdiction.**

    1.    Plaintiff, GERALD MINNITI (hereinafter "Plaintiff") is an adult individual residing at the above address.

    2.    Defendant, CRYSTAL WINDOW & DOOR SYSTEMS PA, LLC (hereinafter "CWDSPA") is a business corporation organized by and operating under the laws of the Commonwealth of Pennsylvania and having a headquarters at the above captioned address.

    3.    Defendant, CRYSTAL WINDOW & DOOR SYSTEMS, LTD (hereinafter "Crystal") is a business corporation organized by and operating under the laws of the State of

New York and having a headquarters at the above captioned address.  Both Defendants are hereinafter referred to as "Defendants."

4.      At all times material hereto, Defendants qualified as Plaintiff's employer pursuant to Title VII of the Civil Rights Act and as defined under Pennsylvania law.

5.      This action is instituted pursuant to the United States Civil Rights Act and the Pennsylvania Human Relations Act.

6.      Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

7.      Supplemental jurisdiction over the Plaintiff's state law claim is conferred pursuant to 28 U.S.C. § 1367.

8.      Plaintiff has exhausted his administrative remedies pursuant to the Equal Employment Opportunity Act and the Pennsylvania Human Relations Act.  (See Exhibit A, a true and correct copy of a "right-to-sue" letter issued by the Equal Employment Opportunity Commission.)

9.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants conduct business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.  Plaintiff was working in the Middle District of Pennsylvania at the time of the illegal actions by Defendants as set forth herein.

**II.  Operative Facts.**

10.     On or about September 3, 2019, Defendants hired Plaintiff as a plant manager for their Benton, Pennsylvania location as captioned above.

11. In or around March of 2020, Plaintiff contacted Defendants' President, Steve Chen, to report that Defendants' Chief Operations Officer, Andy Shashlo, was being verbally abusive to his staff and himself.

12. Mr. Chen responded that Mr. Shashlo would "take it out on [Plaintiff]" if Mr. Chen said something to him.

13. Mr. Chen advised Plaintiff to "just see if it gets better."

14. Shortly after this discussion, Defendants' plant needed to be closed due to concerns over a COVID-19 exposure.

15. Following the reopening of the plant, Plaintiff was furloughed.

16. Upon information and belief, Plaintiff was the only one of Defendants' plant managers to be furloughed; however, during his furlough Plaintiff was still contacted to attend daily calls and provide assistance to the Benton location's staff, without pay.

17. On or about May 11, 2020, Plaintiff was recalled to work.

18. In late May of 2020, Plaintiff met with Defendants' Corporate Human Resources Representative, Isabella Leung, to again report that Mr. Shashlo verbally abused Plaintiff and his staff.

19. Ms. Leung responded that she can't do anything about Mr. Shashlo, and that "[Mr. Shashlo] does the same in the New York office" but that they just ignore him.

20. During this time, Plaintiff also spoke with Mr. Chen to discuss ideas to increase productivity, an action which prompted Mr. Shashlo to yell at Plaintiff, stating "if you're not going to tell [Mr. Chen] what I want you to tell him, then you're not the right manager for me."

21. Shortly after this, on or about June 4, 2020, Mr. Shashlo informed Plaintiff that due to "financial reasons" within the company, Plaintiff would be receiving a 20% pay cut until revenue returned to eight (8) million dollars in sales annually.

22. On or about June 9, 2020, Mr. Shashlo visited the Benton, Pennsylvania plant, and saw a banana on the desk of Dwayne Parker, an African-American employee.

23. Mr. Shashlo yelled at Mr. Parker, who immediately put the banana away and apologized, prompting Mr. Shashlo to respond that he "didn't care" about Mr. Parker's apology.

24. Mr. Shashlo then emailed Plaintiff and stated Plaintiff was "failing as a manager."

25. On or about June 15, 2020, Mr. Shashlo was again in the Benton, Pennsylvania plant, and saw that two employees were out: Mr. Parker, the aforementioned employee was out due to his wife undergoing a cardiac procedure, and Sammy Alberran, another African-American employee was out due to a health issue.

26. Mr. Shashlo became upset and told Plaintiff and Defendants' human resources representative Amanda that these two employees needed to be fired.

27. Plaintiff explained to Mr. Shashlo that these absences were excused as they were medical in nature, and additionally said employees did not have excessive absences.

28. Mr. Shashlo responded that he did not care; that Plaintiff needed to fire them.

29. Plaintiff responded that those employees were two of the only three African-American employees in the plant, and they could end up suing for race discrimination.

30. Mr. Shashlo responded that the employees "couldn't afford" an attorney and that he didn't care about a lawsuit, he wanted them fired.

31. Both employees in question returned to work presenting medical documentation to excuse their absences; Plaintiff refused to fire them.

32. On or about June 17, 2020, Plaintiff filed a complaint with Defendants' human resources representative, Amanda Cardillo, regarding his concerns with firing the aforementioned employees, as they had provided appropriate medical documentation to excuse their absences.

33. On or about June 19, 2020, Mr. Shashlo questioned Plaintiff as to whether the aforementioned employees were back at work; Plaintiff indicated that they were.

34. Shortly after this discussion, one of the aforementioned employees, Mr. Parker, approached Plaintiff angry that his usual piece rate incentive in his paycheck was approximately $400 dollars lower than usual, especially when compared to the paycheck of another employee who made the same salary and worked the same hours.

35. Plaintiff advised Mr. Shashlo that he needed to have a meeting on June 23, 2020, as there appeared to have been an error with Mr. Parker's pay.

36. On or about June 23, 2020, Mr. Shashlo visited the Benton, Pennsylvania plant.

37. During the daily call, Mr. Shashlo indicated that the previous day, June 22, 2020, was the Benton plant's largest shipping day in the history of the plant.

38. Following this call, Mr. Shashlo presented Plaintiff with a termination letter prior to Plaintiff being able to explain Mr. Parker's pay discrepancy.

39. Upon information and belief, on June 24, 2020, Mr. Parker was also terminated for unknown reasons.

40. Defendants' motivation in terminating Plaintiff's employment was his complaints of racial discrimination.

41. As a direct and proximate result of Defendants' conduct in terminating Plaintiff, he sustained great economic loss, future lost earning capacity, lost opportunity, loss of future

wages, as well emotional distress, humiliation, pain and suffering and other damages as set forth below.

**III.  Causes of Action.**

## COUNT I
## TITLE VII CLAIM--RETALIATION
## (42 U.S.C.A. § 2000e-3(a))

42.Plaintiff incorporates paragraphs 1-41 as if fully set forth at length herein.

43.At set forth above, Plaintiff, made complaints to Defendants concerning racially discriminatory conduct that was being directed towards his employees.

44.In retaliation for making these complaints, Defendants took adverse action against Plaintiff by terminating his employment.

45.Plaintiff's participation in protected activity under Title VII was a motivating factor in Defendants' decision to terminate his employment.

46.As such, Defendants' decision to terminate Plaintiff's employment is a retaliatory action contemplated by Civil Rights Act of 1964, § 704(a).

47.As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

48.As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

49. Pursuant to the Civil Rights Act of 1964, § 704(a), 42 U.S.C. §2000e-3(a), et seq Plaintiff demands attorneys fees and court costs.

## COUNT II
## VIOLATION OF FMLA—RETALIATION
## (29 U.S.C. §2601 et seq.)

50. Plaintiff incorporates paragraphs 1-49 as if fully set forth at length herein.

51. As set forth above, Plaintiff engaged in protected activity by opposing Mr. Shashlo's instructions to terminate Mr. Parker's absence to care for his spouse's serious medical condition and Mr. Alberran's absence based on his own serious medical condition.

52. As described above, Defendants terminated Plaintiff's employment, an adverse action, in retaliation for him allowing his employees to exercise their rights to take FMLA leave.

53. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

54. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive and/or liquidated damages.

55. Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq Plaintiff demands attorneys fees and court costs.

## COUNT III
## 42 U.S.C. §1981 CLAIM—RETALIATION

56. Plaintiff incorporates paragraphs 1-55 as if fully set forth at length herein.

57.     At set forth above, Plaintiff complained about racial discrimination as described above and as such, Plaintiff was engaged in protected activity under 42 U.S.C. §1981.

58.     Soon after his complaint, Defendants took adverse action against Plaintiff by terminating his employment.

59.     As set forth above, Plaintiff's participation in protected activity was a motivating factor in Defendants' decision to terminate her employment.

60.     As such, Defendants' decision to terminate Plaintiff's employment is a retaliatory action prohibited by 42 U.S.C. §1981.

61.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

62.     As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

63.     Pursuant to 42 U.S.C. §1981, Plaintiff demands attorneys fees and court costs.

**COUNT IV**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**
**(43 P.S. § 955)**

64.     Plaintiff incorporates paragraphs 1-63 as if fully set forth at length herein.

65.     At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq, an employer may not racially discriminate or retaliate against an employee.

66.     Plaintiff is a qualified employee and person within the definition of Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

67.     Defendants are Plaintiff's "employers" and thereby subject to the strictures of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

68.     Defendants' conduct in terminating Plaintiff is an adverse action, was taken as a result of his complaints of race discrimination and constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

69.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

70.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., Plaintiff demands attorneys fees and court costs.

**IV. Relief Requested.**

**WHEREFORE,** Plaintiff, GERALD MINNITI demands judgment in his favor and against Defendants, CRYSTAL WINDOW & DOOR SYSTEMS PA, LLC and CRYSTAL WINDOW & DOOR SYSTEMS, LTD, in an amount in excess of $150,000.00 together with:

A.  Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

B.  Punitive damages;

C.  Attorneys fees and costs of suit;

D.  Interest, delay damages; and,

E.  Any other further relief this Court deems just proper and equitable.

                                                **LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: _____
                                    **GRAHAM F. BAIRD, ESQUIRE**
                                    Two Penn Center
                                    1500 JFK Boulevard, Suite 1240
                                    Philadelphia, PA 19102

                                    Attorney for Plaintiff, Gerald Minniti

Date:  10/19/2021